GREGORY L. COLER, Director of the Department of Children and Family Services, *et al.*, Plaintiffs-Appellees, *v.* CARLOS REDD *et al.*, Defendants-Appellants.

Fourth District   No. 16933

Opinion filed October 15, 1981.

Earle McCaskill, of East St. Louis, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Joseph D. Keenan, III, Special Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

On August 31, 1979, petitioner, Department of Children and Family Services (DCFS), filed a petition with the Illinois Civil Service Commission (Commission) seeking to discharge for cause its certified employee, respondent, Carlos Redd, a caseworker. The charges alleged he had failed to "complete recordings and updating" on his assigned cases and he had been excessively tardy. After a hearing before a hearing officer, the Commission found the charges to have been proved only in part and imposed only a sanction of supervision and suspension. On August 20, 1980, DCFS filed a petition for administrative review in the circuit court of Sangamon County. That court found the Commission's decision to be contrary to the manifest weight of the evidence and reversed and remanded. We, in turn, affirm the decision of the circuit court with a more specific mandate.

The administrative hearing was held upon respondent's demand pursuant to section 11 of the Personnel Code (Ill. Rev. Stat. 1979, ch. 127, par. 63b111). The hearing officer recommended only a suspension of 30 days, but the Commission ordered a 90-day suspension to be enforced in addition to a 30-day suspension previously imposed.

The testimony on behalf of DCFS was given by people who had supervised defendant or had worked with him. The undisputed evidence was that defendant was excessively tardy and had failed to complete recordings and updating on his assigned cases. However, the evidence was disputed as to why defendant had failed to complete these procedures.

Helen Cox, the Regional Child Development Coordinator for DCFS, testified that at times she had been defendant's supervisor. She stated while she supervised him from June through October, 1974, defendant failed to bring his case recordings up to date, even though he had received a delinquency report. Cox testified that recordings are memoranda placed by a caseworker in a client's file indicating what activities the caseworker has engaged in on behalf of or with the client. She stated the recordings are necessary under Federal regulations requiring the department to document the work done in a given case situation and these recordings must be completed and submitted every six months. Cox explained that a case was closed when the supervisor determined no additional services were needed in that case. She stated the caseworker would do the paperwork and then submit the case to the supervisor for that determination. Cox testified that if the worker failed to make the recordings, the supervisor would not have any direct information on the client.

Vivian Sanders testified she was defendant's direct supervisor during the months of June through August of 1979, the period of the charges

against defendant. She stated that defendant: (1) failed to submit the required daily service sheets which indicated what had occurred during the work day; (2) was tardy 20 times from the end of June 1979 through July 1979, the period during which time sheets were kept; (3) failed to place any files in such condition that they could be closed, all in disregard of an agreement defendant had with her to close most of his cases within a 30-day period; (4) read magazines and newspapers while at his desk instead of doing his work; and (5) took two unauthorized absences. Sanders stated that on July 25, 1979, she wrote defendant a memorandum stating she was recommending disciplinary action against him due to his conduct. Previously, Sanders had written defendant memoranda regarding his tardiness and his unauthorized absences, and four memoranda regarding his case recordings and closings. Sanders also testified that workers under her supervision were permitted to determine when a case could be closed.

Deborah Moffatt and Robert Clark, social workers who were assigned to defendant's cases after discharge proceedings were initiated, testified none of defendant's cases were current in their recordings. Moffatt testified the most recent recordings ranged from one to three years old. Both Moffatt and Clark stated the paperwork involved in closing the cases required about two hours each to complete. Prior to closing each case, Moffatt stated she spent approximately three hours on it and Clark stated he spent one or two days. Moffatt and Clark further testified they were able to close all but a few of defendant's cases.

A number of witnesses testified on behalf of defendant. However, none of them had any personal knowledge of what occurred in the East St. Louis office where defendant was employed while Vivian Sanders supervised defendant. Lorraine Sanders, an account clerk in the office from June 1976 to April 1977, testified she thought Cox "picked" on defendant. Joanne Woods, a child welfare worker in the office from 1974 to April 1979, and defendant's girlfriend, testified defendant's delinquent recordings were no longer than anyone else's in the office. Woods stated that Cox was stricter with defendant than with other employees and the relationship between Cox and defendant was poor. Barbara McKissic, a social worker in the office from June 1976 to October 1978, testified the relationship between Cox and defendant was hostile and Cox was not able to provide supervisory assistance to defendant. Jeffrey Gunn, one of defendant's former supervisors, testified he made no written warnings to defendant during the period he supervised him, although defendant may have had a problem with tardiness.

Defendant testified he felt he had been singled out by Cox, as Cox told him that she was preparing the paperwork to get rid of him. Defendant stated Cox would not permit him to close cases, although she

would permit other employees to do so. He further stated he did not receive any memoranda regarding updating his cases or regarding his tardiness.

The hearing officer found defendant's claim that he was the object of a campaign to harass him and to build a record against him for discharge was "plausible and supported by the evidence." The officer further stated:

"The evidence shows that Respondent did all of the social work required in the cases assigned to him. However, the cases remained open. The two workers to whom the cases were assigned testified that it took them only one to two hours per case to close these cases. It is difficult to believe that Respondent would do all of the work, complete the services to the clients, and then fail to carry out a relatively ministerial or clerical duty. If he had done all the work, surely it would be reasonable for him to close the case. What is particularly striking is that one of the workers to whom his case was given testified that she was told by Cox' supervisor, Vivian Sanders (evidently Cox and Vivian Sanders interchange in their supervision of Respondent) that the most recent recording in Respondent's cases was made in the fall of 1978. This was one year previous to Respondent's discharge. If Cox and Sanders were giving adequate and fair supervision to Respondent, it is difficult to see how they could have permitted these cases to have gone for a period of over one year without being closed. They could have and should have taken immediate action upon a refusal or neglect on the part of Respondent to close a case and not wasted a year.

The fact that these cases were left open for such a long period of time confirms Respondent's allegation that a 'paper trail' was being made against him and that he was being set up for discharge by Cox' refusal to permit him to close his cases. Perhaps he was at fault in this matter, but the record shows that whatever fault he was guilty of in this regard was condoned by Cox and Sanders for a period of time until they evidently felt that the unclosed cases constituted a noose in which to hang the Respondent."

The hearing officer found defendant not guilty of the charge of failing to record and update his cases. As to the tardiness charge, the officer found that while defendant was late, it was apparent he was being closely watched for his tardiness and the tardinesses were used as a pretext for his discharge.

■■ Generally, the proper standard to be used on review in determining whether the findings of an administrative agency should be overturned is whether they are contrary to the manifest weight of the evidence. Most recently the supreme court stated in *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547,

that a court's scope of review of a Civil Service Commission decision regarding discharge is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. The findings on questions of fact are to be held *prima facie* true and correct. If the findings are not contrary to the manifest weight of evidence, the second step is to determine if the agency's findings provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist.

In the foregoing case, all of the levels of reviewing courts found the Commission's findings to not be against the manifest weight of the evidence. However, the trial and appellate courts, contrary to the Commission, concluded defendant's conduct in striking a mental patient was sufficient cause for discharge. The supreme court reversed, stating the agency's decision as to cause should not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. The court stated that cause has been judicially defined as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " (85 Ill. 2d 547, 551.) There the court could not find the Commission's decision, under the record, to be arbitrary, unreasonable, or unrelated to the requirements of service.

■■ Although substantial deference must be given to the Commission's findings, we conclude that the Commission's findings, that defendant was not guilty of failing to complete recordings and updating of his cases and that any failure upon his part to do so was merely the result of harassment and lack of supervision by Cox and Sanders, are palpably contrary to the manifest weight of the evidence. There is no dispute defendant failed to make recordings, and cases could not be closed without recordings. Cox may have refused to permit closing of many cases, but cases could not have been properly closed until all recordings had been made. Defendant seemed to indicate he was so busy with other things he could not make the recordings, yet during the month when he was given a final opportunity to bring his work up to date, he was tardy from 30 minutes to an hour on 20 days. Under those circumstances, we deem it evident that the Commission's determination defendant's tardiness was a mere pretext for his firing was clearly wrong.

We do not agree with the Commission's conclusion the evidence indicates most of the files could have been closed with one to two hours' work. The testimony of Moffatt and Clark was that the paperwork could be done for an average of two hours per file but that more time was required to gather the information necessary to make the determination whether the file could be closed.

While the Commission could have believed the defendant's evidence that Cox had indicated she would get defendant fired, it is important to consider that no evidence existed that Sanders had made such a statement. In any event, the overwhelming evidence indicated both had good reason to believe the best interests of DCFS and its clients would be served by relieving defendant of his duties.

The Commission criticizes Cox and Sanders for not having given defendant more supervision and for not having called his failure to keep his work up to date to his attention. Defendant, on the other hand, argues they gave him too numerous memoranda. After examining the memoranda introduced into evidence, we are satisfied that defendant had ample warning of his shortcomings and that the memoranda given him were appropriate. Any determination otherwise was contrary to the manifest weight of the evidence.

Accordingly, we affirm the portion of the trial court order reversing the decision of the Commission. On remand, however, the mandate to the Commission is to enter findings that the charges against defendant have been proved. The Commission shall then, in the light of these findings, enter an appropriate sanction.

Affirmed in part; reversed in part; and remanded.

MILLS and WEBBER, JJ., concur.