DECATUR SPORTS FOUNDATION, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Fourth District   No. 4—86—0517

Opinion filed June 22, 1987.

Philip L. Bateman and James W. Alling, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Edward M. Kay, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

This appeal arises from administrative review of a decision by the Illinois Department of Revenue (Department) denying a charitable tax exemption sought by Decatur Sports Foundation (Foundation) for 1984 under section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 500.7). The plaintiff sought review in the circuit court of Macon County, which affirmed the Department's findings. On appeal, plaintiff raises issues relating to the standard of review applied by the circuit court, the hearing referee's conclusion that the Foundation had not met the requirements for charitable exemption, and whether the decision included taxes imposed in 1983 and 1984. We affirm the judgment of the circuit court.

The Foundation's claim for charitable exemption concerns improvements made to Borg-Warner Field. Borg-Warner Field (field) is a 40-acre tract of land in Macon County used as a recreational facility for baseball, softball, soccer, and other sports. The property was originally owned by the Marvel-Schebler/Tillotson Division of Borg-Warner Corporation (Borg-Warner), which entered into a lease dated January 2, 1974, with Decatur Boys' Baseball for the purpose of developing facilities for youth baseball. Decatur Boys' Baseball subsequently constructed several baseball diamonds on the property.

In 1979, the American Softball Association chose Decatur as the site of its 1980 men's fast-pitch softball tournament. The Foundation was incorporated as Borg-Warner Decatur Sports Foundation, a not-for-profit corporation, on April 16, 1979. The name was changed to Decatur Sports Foundation the following year. The Foundation was organized, *inter alia*, to provide sports facilities for youths and adults in Decatur and Macon County, Illinois.

On July 27, 1979, Decatur Boys' Baseball assigned to the Foundation its interest in the lease with Borg-Warner and improvements made to the field. The agreement specified that the Foundation desired to construct a softball stadium to be used for the 1980 national tournament. The agreement stated that Decatur Boys' Baseball had certain rights to use the diamonds in exchange for its assignment of interest.

The Foundation entered into a 10-year lease with Borg-Warner Corporation on February 1, 1980. The total rent was $1 and the lease term was subject to two successive 5-year options. The lease provided that at the end of the lease period or at the time of termination, the Foundation would "peaceably deliver up the demised premises to the Lessor free of any clubhouse, outbuildings, gates, fences, goalposts, and all permanent structures placed on the demised premises by Lessee." Borg-Warner agreed to allow the Foundation "to remove any clubhouse, outbuildings, gates, fences, goalposts, and related items placed by the Lessee on the demised premises."

In preparation for the men's fast-pitch tournament in 1980, the Foundation constructed a new lighted diamond, a press box, bleachers, dugouts, and fences at the field. Further improvements resulted from the sponsorship of a men's baseball team by Archer Daniels Midland Company (ADM). ADM's team used the new diamond pursuant to a 1981 agreement with the Foundation in which ADM agreed to install new seating at the diamond. In 1983, ADM contributed over $80,000 for new bleachers, more than $50,000 for construction of restrooms, and agreed to pay for a new scoreboard. A national tournament was held at the field in 1983. Decatur Boys' Baseball and other area sports groups continued to use the field pursuant to subleases with the Foundation. The agreements required the groups to pay nominal rent and improve their portions of the field.

On December 28, 1983, the Macon County board of review issued a "Notice of Revised Assessment" for the year 1983 on improvements to Borg-Warner Field, which were assessed at $17,360.

The Foundation filed an assessment complaint on February 1, 1984, claiming that the property was exempt as of January 1, 1983. The board of review issued a certificate of error dated August 10, 1984, stating that the improvements were exempt for 1983.

The board of review issued another "Notice of Revised Assessment" dated August 3, 1984, stating that the improvements were exempt for 1984, subject to State approval. The board forwarded a certification of exemption request to the Department, which was received September 12, 1984. The Department issued a denial notice dated November 27, 1984, which stated that the primary use of the property was not charitable.

On December 5, 1984, the Foundation and Borg-Warner entered into an agreement for gift providing for the transfer of ownership of the field to the Foundation. The agreement contained provisions for retaining the name of the field and for disposition of the property upon dissolution of the Foundation. Borg-Warner conveyed the property to the Foundation by quitclaim deed executed on December 5, 1984.

The Foundation requested review of the Department's decision on December 7, 1984, and submitted a brief in support. On January 30, 1985, the Department denied the exemption on the previously stated grounds and added that the property was not owned by a charitable organization. The Foundation requested a formal hearing February 14, 1985. The Macon County board of review thereafter issued an omitted 1983 tax bill for $815.46 on the improvements only, which the Foundation paid. The 1984 tax bill for $819.06 was paid in 1985.

Following a formal hearing on October 9, 1985, the hearing referee denied the exemption request for a decision mailed February 11, 1986. He found that until December 5, 1984, the land was leased from Borg-Warner and subleased to groups which engaged in conducting sports activities. The referee concluded that the property was not owned by the Foundation during 1984. Moreover, the Foundation failed to meet the definitional criteria for charitable organizations set forth in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537. He found that the primary use of the property was recreational, not charitable. He stated that since ownership of the property was necessary under the statute, the Macon County board of review erred in exempting the improvements only.

The Foundation filed a complaint for administrative review in the circuit court of Macon County on March 17, 1986. The circuit judge affirmed the denial of exemption on July 28, 1986, concluding

that the decision of the hearing referee was not against the manifest weight of the evidence. The Foundation filed its notice of appeal August 1, 1986.

Initially, the Foundation asserts that the circuit court applied the incorrect standard of review to the hearing referee's conclusions of law. We need not consider this question, since we find that sufficient factual grounds exist to affirm the circuit court's decision.

The Foundation contends that the circuit judge erred in concluding that the hearing referee's findings of fact were not against the manifest weight of the evidence. The Foundation specifically challenges the hearing referee's conclusion that it did not own the parcel in issue during most of 1984. It argues that the improvements, not the underlying real estate, constituted the property in question. The Department contends that ownership of the real estate is necessary for exemption.

■■ ■ Generally, in reviewing an administrative decision the scope of review is limited to whether the findings of the agency are against the manifest weight of the evidence. (*Coler v. Redd* (1981), 100 Ill. App. 3d 992, 995, 427 N.E.2d 622, 624.) Findings of fact are against the manifest weight of the evidence when a contrary result is clearly evident. *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 1002-03, 467 N.E.2d 635, 637.

The scope of review in administrative cases is governed by section 3—110 of the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—110). That section specifies that the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. *Department of Revenue v. Smith* (1986), 150 Ill. App. 3d 1039, 1049, 501 N.E.2d 1370, 1378.

Article IX of the Illinois Constitution provides:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." Ill. Const. 1970, art. IX, sec. 6.

Section 19.7 of the Act exempts:

> "All property of institutions of public charity, all property of beneficent and charitable organizations, *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit ***." Ill. Rev. Stat. 1983, ch. 120, par. 500.7.

■ In order to qualify for exemption, a charitable organization must prove that it owns the property and uses it exclusively for

charitable purposes. (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 397, 146 N.E.2d 73, 79; *Good Samaritan Home v. Department of Revenue* (1985), 130 Ill. App. 3d 1036, 1039, 474 N.E.2d 1387, 1390.) The burden is on the applicant to prove eligibility for exemption by clear and conclusive evidence. *Board of Certified Safety Professionals v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485, 488; *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 390, 146 N.E.2d 73, 75.

The hearing referee concluded that since the parcel in question was owned by Borg-Warner during all but 26 days of 1984, the Foundation was not entitled to an exemption. The Foundation urges that this conclusion fails to take into consideration the fact that the property assessed by the Macon County board of review consisted of improvements only. The record shows that both the notice of revised assessment, the assessment complaint filed by the Foundation, and certificate of error issued by the board of review for the 1983 assessment concerned improvements only. With respect to the 1984 exemption, the notice of revised assessment and the certificate of exemption related to improvements. The attorney for the Foundation stated at the beginning of the formal hearing on October 9, 1985, that the dispute concerned the exemption of improvements to Borg-Warner Field.

Our opinion in *In re Tax Objections of Hutchens* (1976), 34 Ill. App. 3d 1039, 341 N.E.2d 169, controls. In *Hutchens*, this court ruled that a cabin should not have been assessed and taxed separately from the underlying real estate. The owner of a cabin located on land leased to him objected to the assessment of real estate taxes against the cabin itself. The lease included a provision that the cabin could be removed at the termination of the lease. The trial court concluded that the manner of the placement of the cabin on blocks, and the fact that the lease provided for plumbing connections between the cabin and a septic tank, attached the cabin to the land sufficient "to become a part of it." (34 Ill. App. 3d 1039, 1041, 341 N.E.2d 169, 170.) Neither the lease provision allowing removal nor the fact that the cabin could be removed without doing substantial damage to the land prevented the cabin from being considered part of the land. This court agreed with the trial court's finding that the cabin was part of the real estate. (34 Ill. App. 3d 1039, 1042, 341 N.E.2d 169, 171.) We relied in part on section 1(13) of the Revenue Act of 1939, which defined real property as including "all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind." 34 Ill. App. 3d 1039, 1040, 341 N.E.2d

169, 170, citing Ill. Rev. Stat. 1973, ch. 120, par. 482(13).

The owner of the cabin successfully argued that the value of the building should have been included in the assessment of the land owned by the landlord. This court concluded that the statutory requirement that assessors fix and list the assessed values of land and improvements separately did not mean that the two items were intended for independent treatment thereafter. (34 Ill. App. 3d 1039, 1042, 341 N.E.2d 169, 171, citing Ill. Rev. Stat. 1973, ch. 120, par. 524.) In fact, the statutory scheme of assessment and enforcement of taxes was not seen to embrace the concept of land and buildings as separately taxed components. (34 Ill. App. 3d 1039, 1042, 341 N.E.2d 169, 172.) We note that the version of section 43 of the Act in effect when the case at bar arose no longer required the fixing of separate values, but still directed the assessor to list the valuations of tracts and improvements in separate columns, in essence necessitating individual determinations. Ill. Rev. Stat. 1983, ch. 120, par. 524.

Under this analysis, the stadium, bleachers, press box, restroom facilities and other improvements in the instant case constituted part of the real property, despite the lease provisions allowing removal, and taxes should not have been assessed against the Foundation. The Macon County board of review should have included the assessed value of improvements in the tract listed in the owner's name.

■ It is undisputed that Borg-Warner was the owner of the underlying real estate until December 5, 1984. Therefore, with the exception of 26 days, the Foundation did not own the property during 1984. We hold that the circuit judge correctly concluded that the hearing referee's decision was not against the manifest weight of the evidence. As our determination of this issue is dispositive of the matter, we need not address the Foundation's other contentions.

The judgment of the circuit court of Macon County is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.