Carolyn WELCH, Plaintiff–Appellant,

v.

Gordon JOHNSON, et al., Defendants–Appellees.

No. 88–2507.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1989.

Decided July 23, 1990.

---

8. *See supra* note 7.

Gerald A. Goldman, Arthur R. Ehrlich, Goldman & Marcus, Chicago, Ill., for plaintiff-appellant.

James A. Coghlan, Laurel Black Rector, Asst. Attys. Gen., Office of the Attorney Gen., Welfare Litigation Div., Chicago, Ill., for defendants-appellees.

Before POSNER and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Carolyn Welch appeals the district court's grant of summary judgment on grounds of res judicata in favor of the defendants on her claims under 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000e–2 and –3. For the following reasons, we affirm in part and reverse in part.

## I  BACKGROUND

### A.  *Relevant Facts*

Plaintiff-appellant Carolyn Welch is a former employee of the State of Illinois. From 1974 to May 1985 she was employed in the Department of Children and Family Services (DCFS). On January 29, 1985, Ms. Welch filed a one count complaint in federal court under 42 U.S.C. § 1983 alleging that, since September 1983, the DCFS and several officials within DCFS had been harassing her in retaliation for a discrimination complaint she had filed with the Illinois Department of Human Rights in 1980. Ms. Welch alleged six specific instances of discrimination: (1) that, in September 1983, the defendants had denied her a promotion to the position of Child Welfare Administrator IV and had promoted a lesser qualified male to the position; (2) that she had received unfair and incorrect memoranda that criticized her job performance and her use of vacation and sick leave; (3) that the defendants had made repeated and inappropriate demands to review her statements of economic interest that are filed annually with the Illinois Secretary of State; (4) that the defendants had charged her before the Illinois Board of Ethics with a conflict of interest in the performance of her job; (5) that the defendants had disseminated false and misleading information about her to the media; and (6) that the defendants had threatened her with imminent dismissal.

On May 7, 1985, several months after she had filed her section 1983 complaint, Ms. Welch was discharged from her position at DCFS. On May 20, 1985, she appealed her dismissal to the Illinois Civil Service Commission (CSC). An initial hearing was conducted before a CSC hearing officer on September 27, 1985. The focus of this hearing was to determine whether DCFS could substantiate its dismissal charges against Ms. Welch. Nearly all the dismissal charges against Ms. Welch pertained to her alleged misuse of her position with DCFS to pursue her personal interest in Adoptions Unlimited, Inc., a private adoption agency in which she allegedly held an

ownership interest. The specific charges against Ms. Welch were as follows: (1) violations of Illinois law by taking custody of a child in November 1983 while representing Adoptions Unlimited, Inc., an unlicensed adoption agency; (2) violations of Illinois law and the Interstate Compact on the Placement of Children by transporting this child in November 1983 from Illinois to Indiana and placing the child with a family in Indiana; (3) falsification of employee time records on two days during February 1984 to reflect her presence at work while actually conducting business on behalf of Adoptions Unlimited; (4) misuse of sick leave on various days between November 1983 and October 1984 to perform duties on behalf of Adoptions Unlimited; (5) theft and failure to maintain the confidentiality of DCFS client information, based on the discovery in October 1984 of copies of DCFS master file cards and a DCFS client's psychological profile in the offices of Adoptions Unlimited; (6) improper participation in a private adoption during February through December of 1983; (7) an unauthorized return to her office on March 29, 1985, in violation of express instructions from a supervisor not to return to the office without permission.

On February 28, 1986, the CSC hearing officer issued factual findings and a recommendation that the discharge of Ms. Welch was warranted because the charges against her had been proved in part. On March 29, 1986, the CSC issued its own decision, in which it adopted the findings and recommendations of the hearing officer.

On April 22, 1986, Ms. Welch filed in the Circuit Court of Cook County a complaint for administrative review of the CSC's decision. On October 29, 1987, the circuit court held a hearing on the complaint, after which it affirmed the CSC's findings as not contrary to the manifest weight of the evidence and the CSC's conclusion that Ms. Welch's discharge was warranted.[1]

### B. Proceedings in the District Court

Back in September 1985, while the CSC hearing officer was conducting a hearing on the dismissal charges, Ms. Welch amended her complaint in the federal action to include two additional counts of discrimination under Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e to 2000e–17. Count II alleged that, in September 1983, DCFS violated 42 U.S.C. § 2000e–2 by denying Ms. Welch a promotion to Welfare Administrator IV based solely on her sex. Under Count III, Ms. Welch realleged the facts under Count I (the section 1983 claim) and contended that these same facts constituted a violation of 42 U.S.C. § 2000e–3.

On November 21, 1986, during the pendency of Ms. Welch's administrative review proceeding in the Circuit Court of Cook County, the defendants filed a motion for partial summary judgment in federal district court on grounds that the CSC's decision barred the section 1983 claim. After the state circuit court affirmed the CSC's decision, the defendants amended their motion for summary judgment to include Ms. Welch's Title VII claims. The defendants argued that Ms. Welch had been afforded a full and fair opportunity in her CSC hearing to litigate any defenses to her discharge, "including the defense that the discharge was the product of discrimination." Memorandum Opinion and Order, No. 85 C 779 (July 6, 1988) at 3 [hereinafter Mem. Op.]. The defendants thus contended that the state circuit court's decision to affirm the CSC's findings and conclusions constituted res judicata as to Ms. Welch's federal claims of discrimination based on section 1983 and Title VII.

### C. District Court Opinion

Relying primarily on this court's decision in *Lee v. City of Peoria*, 685 F.2d 196 (7th

1. Ms. Welch eventually appealed part of the circuit court judgment to the Appellate Court of Illinois, which affirmed the circuit court. *Welch v. Dept. of Children and Family Serv.*, 174 Ill.App.3d 1156, 139 Ill.Dec. 608, 548 N.E.2d 1164 (1988) (table). The appellate court judgment was rendered after the federal district court's judgment in this case and during the pendency of the present appeal. The appellate court's decision affirming the circuit court is irrelevant to our disposition of the case.

Cir.1982), the district court granted the defendants' amended motion for summary judgment. The district court began by noting that, under 28 U.S.C. § 1738, federal courts are required to give state court judgments the same full faith and credit that is given in the state's own courts. Thus, because Ms. Welch's discharge had been reduced to a state court judgment, the district court concluded that it must give that judgment "the same force and effect that other state courts would." Mem. Op. at 4. Moreover, the court noted, its obligation to give effect to the state court judgment was not altered by the fact that Ms. Welch had filed a federal suit under section 1983 and Title VII. *Id.* (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), and *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

The court then turned to an application of the elements of res judicata. Quoting this circuit's decision in *Lee*, 685 F.2d at 199, the court stated three prerequisites for the application of res judicata:

"(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."

*Id.* (quoting *Lee*). The court then focused on the disputed second element of the test: " 'whether this suit presents the same cause of action for *res judicata* purposes as the prior state administrative proceeding.' " *Id.* at 5 (quoting Defendants' amended motion for summary judgment at 8). In determining whether there was a single cause of action for purposes of res judicata, the district court attempted to determine if the state administrative and federal actions arose out of a " 'single core of operative facts.' " *Id.* (quoting *Lee*, 685 F.2d at 200). The district court then concluded that an "[e]xamination of the facts underlying the federal suit and the admin-

istrative proceedings reveals that there is an identity of causes of action in this case." *Id.*

In rejecting Ms. Welch's contention that the facts underlying the federal action differed from those underlying the state discharge proceedings, the district court reasoned as follows:

The charges involved in plaintiff's dismissal included claims that plaintiff was operating a private adoption agency while employed at DCFS and was using her position at DCFS to obtain benefits for her private business. The hearing officer found these charges substantiated in part. In her federal civil rights action, plaintiff complains about how DCFS personnel treated her, including criticisms of her use of sick leave, requests to review statements of economic interest, a charge of conflict of interest before the Illinois Board of Ethics, and dissemination of information to the media. The court believes that DCFS's treatment of plaintiff relates directly to plaintiff's activities with the private adoption agency. If plaintiff had any defense that her treatment by DCFS culminating in her dismissal was attributable to sexual discrimination, plaintiff should have raised that defense at her dismissal hearing. Plaintiff cannot now relitigate a factual scenario already ruled on by the administrative agency and affirmed by a state court.

*Id.* at 7–8. The district court thus concluded that both the federal section 1983 claims and the Title VII claims were barred by res judicata. Accordingly, the court granted the defendants' motion for summary judgment.

## II ANALYSIS

### A. *General Principles*

■ The issue before us on appeal is whether the district court erred in concluding that Ms. Welch's Title VII and section 1983 claims were barred by res judicata.[2]

---

**2.** As used in this opinion, the term "res judicata" is synonymous with the concept of "claim preclusion," which refers to " 'the preclusive effect of a judgment in foreclosing litigation of mat-

ters that were or could have been raised in an earlier suit.' " *LaSalle Nat'l Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930 n. 2 (7th Cir.1988) (quoting *Kirk v. Board of Educ.*, 811

As the district court noted, the basis for this inquiry is 28 U.S.C. § 1738, which requires federal courts to give state court judgments "the same full faith and credit ... as they have by law or usage in the courts of such state." 28 U.S.C. § 1738; *see LaSalle Nat'l Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930 (7th Cir.1988) (and cases cited therein), *cert. denied*, 109 S.Ct. 1536 (1989). This admonition means that a " 'state judgment must be given the same *res judicata* effect in federal court that it would be given in the court of the rendering state.' " *LaSalle*, 856 F.2d at 930 (quoting *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987)). Although the Supreme Court has held that 28 U.S.C. § 1738 is not applicable to endow *unreviewed* administrative proceedings with preclusive effect in Title VII litigation in federal court, *University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3224–25, 92 L.Ed.2d 635 (1986), when *a state court judgment* has been rendered in a state whose laws would give the judgment preclusive effect, the Supreme Court has held section 1738 applicable to preclude claims under both Title VII, *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 476, 102 S.Ct. 1883, 1894–95, 72 L.Ed.2d 262 (1982), and section 1983, *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 84, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984).[3] *Kremer* teaches that the determination of whether to apply res judicata in this context is a two-pronged inquiry: (1) whether the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action; and (2) whether the party against whom preclusion is asserted had a full and fair opportunity in the state proceedings to litigate the claims (i.e., whether the state proceedings satisfy minimum due process requirements). *Kremer*, 456 U.S. at 481–82, 102 S.Ct. at 1897–98; *see also Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1241 (7th Cir.1983).

■ The application of section 1738 in this case requires us to revisit the principles of res judicata under Illinois law. These principles recently were discussed by this court in *LaSalle Nat'l Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930 (7th Cir.1988) (citing *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987)), which will serve as a guide for our current inquiry. *See also Durhan v. Neopolitan*, 875 F.2d 91, 93–96 (7th Cir.1989); *Wozniak v. County of DuPage*, 845 F.2d 677, 680–82 (7th Cir.1988); *Hagee v. City of Evanston*, 729 F.2d 510 (7th Cir.1984). As noted in *LaSalle*, 856 F.2d at 930, it has been difficult to distill uniform principles of Illinois law on res judicata from the often conflicting language of the Illinois appellate cases. This court has, however, identified several settled threshold propositions:

> 1) Under Illinois law of res judicata, a final judgment on the merits rendered by a court of competent jurisdiction bars the

F.2d 347, 351 n. 7 (7th Cir.1987)), *cert. denied*, — U.S. ——, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989). Res judicata, as used in this sense, is to be distinguished from "collateral estoppel," or "issue preclusion." Issue preclusion "refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Id.* Only the application of res judicata is at issue in this case.

3. Ms. Welch, nonetheless, urges that the Supreme Court's decision in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), and this circuit's decision in *Buchalter v. Pepsi–Cola Gen. Bottlers, Inc.*, 768 F.2d 842 (7th Cir.1985), *vacated in part*, 478 U.S. 1017, 106 S.Ct. 3328, 92 L.Ed.2d 735 (1986), are applicable to the issue before us and limit the preclusive effect that can be given in a Title VII

case to issues that actually have been litigated in the state proceedings. We agree with the district court that these cases are inapplicable to the case at hand because those cases were concerned with the preclusive effect of *unreviewed* agency determinations. *See Elliott*, 478 U.S. at 794, 106 S.Ct. at 3224; *Buchalter*, 768 F.2d at 849; *see also Bray v. New York Life Ins.*, 851 F.2d 60, 63 (2d Cir.1988) (holding that *Elliott* did not apply to cases where administrative agency's determination was reviewed by a state court). The crucial distinction between these cases and the case before us is that 28 U.S.C. § 1738 was not applicable in either *Elliott* or *Buchalter*. *See Elliott*, 478 U.S. at 796, 106 S.Ct. at 3224–25; *Buchalter*, 768 F.2d at 849. Section 1738 is, however, applicable in this case, and it commands that we give the Illinois circuit court's judgment the same preclusive effect that such a judgment would have in Illinois.

same parties or privies from relitigating matters that were raised or could have been raised in the prior action.

2) As a general proposition ... a final judgment on the merits not only settles issues that actually were litigated in the prior action but also issues that might have been raised in the prior action.

3) The party asserting the defense of res judicata has the burden of showing with clarity and certainty what was determined by the prior judgment. Any doubt as to what was decided in the earlier action must be resolved against an application of res judicata.

4) The essential elements of res judicata are (1) an identity of parties or their privies; (2) an identity of causes of action in the earlier and in the later suit; and (3) a final judgment on the merits in the earlier suit.

*Id.* at 930–31 (citations omitted).

### B. *Same Cause of Action*

■ As is frequently the case in this type of litigation, the controversy here is whether Ms. Welch's state and federal suits constitute the same cause of action for purposes of res judicata. In *Hagee*, 729 F.2d at 512–13, this court noted that the Illinois appellate courts have taken two different approaches to determining what constitutes a single cause of action for purposes of res judicata. *See also LaSalle*, 856 F.2d at 931 (quoting *Hagee* ).[4] Under the "proof" approach, two suits would involve the same cause of action if the same evidence would sustain both actions. *See id.* at 931. By contrast, the "transactional" approach focuses not on the proof required in each suit, but rather on the factual setting that underlies each suit. Under a "transactional" analysis, " '[i]f both suits arise from the same transaction, incident, or factual situation, res judicata generally will bar the second suit.' " *Id.* (quoting *Hagee*, 729 F.2d at 513). As one Illinois appellate court stated regarding its application of the "transactional" approach,

" '[t]he mere fact that different claims are alleged is immaterial; the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.' "

*Id.* (quoting *Hagee*, 729 F.2d at 513) (quoting *Baird & Warner, Inc. v. Addison Indus. Park, Inc.*, 70 Ill.App.3d 59, 26 Ill.Dec. 1, 8, 387 N.E.2d 831, 838 (1979)).

Also instructive for purposes of this case are statements of the Supreme Court of Illinois regarding the scope of res judicata:

" '[T]he conclusiveness of the judgment in [the prior action] extends not only to matters actually determined, but also to other matters which could properly have been raised and determined therein. This rule applies to *every question relevant to and falling within the purview of the original action,* in respect to matters of both claim or grounds of recovery, *and defense,* which could have been presented by the exercise of due diligence.' "

*Id.* at 932 (quoting *Hagee*, 729 F.2d at 514) (quoting *Hughey v. Indus. Comm'n*, 76 Ill.2d 577, 31 Ill.Dec. 787, 789, 394 N.E.2d 1164, 1166 (1979)) (first emphasis in original and second emphasis supplied)). This court in *Hagee* elaborated on the above-stated proposition from the Supreme Court of Illinois:

The principle that res judicata extends *to all matters within the purview of the original action,* whether or not they were actually raised, is tantamount to a rule requiring parties to consolidate all *closely related matters* into one suit. As such, the principle serves well the interest of judicial economy, and thus it is at the core of the res judicata doctrine.

*LaSalle*, 856 F.2d at 932 (quoting *Hagee*, 729 F.2d at 514) (footnote omitted; first emphasis in original; second emphasis supplied).

In *LaSalle*, after reviewing both the "proof" and "transactional" approach to identifying the same cause of action, this

---

**4.** As noted in *LaSalle,* however, significant variations on these two approaches have been expressed by the Illinois courts. 856 F.2d at 931

n. 2 (citing *Hagee v. City of Evanston*, 729 F.2d 510, 513 n. 6 (7th Cir.1984)).

court concluded that the "collective wisdom" of our cases on this issue suggested that we should focus on "a comparison of the factual undergirding of the two cases at issue," 856 F.2d at 933, to determine whether there is one cause of action. We now turn to an application of that "collective wisdom" to the case before us.

## C. *Application of the Principles*

### 1. Claims related to the harassment and discharge

■ In this case, the defendants contend that Ms. Welch should have raised her section 1983 and Title VII discrimination claims *as a defense* in the state proceedings that she initiated to review the propriety of her discharge. As noted above in the quoted passage from *Hughey v. Industrial Commission*, 76 Ill.2d 577, 31 Ill.Dec. 787, 789, 394 N.E.2d 1164, 1166 (1979), the Supreme Court of Illinois clearly contemplated that if a defense is grounded in matters "within the purview of the original action," *id.*, such a defense may be barred by res judicata if not raised in the original action.[5] The facts underlying the discharge action were allegations that Ms. Welch had violated certain statutory provisions, work rules, and policies by operating a private adoption agency while she was employed at DCFS and by using her position at DCFS to benefit her personal business interest in the private agency. *See* Hearing Officer's Findings, R. 51, Ex. A at 1–4. In her federal section 1983 complaint, Ms. Welch alleged that DCFS officials had rendered unduly critical evaluations of her job performance and use of sick leave, had

made inappropriate demands to review her statements of economic interest, had charged her with a conflict of interest, had disseminated false information about her to the media, and had threatened her with imminent dismissal. *See* Plaintiff's Amended Complaint, R. 12 at ¶ 8. For the reasons set forth in the following paragraphs, we conclude that, under Illinois law, these allegations constitute the same cause of action as the one in the state proceedings.

Under the "proof" approach, the same evidence that Ms. Welch would offer to establish her section 1983 claim is the same evidence that she could have offered in the state proceedings as a defense to the propriety of her discharge. For example, in the federal section 1983 action, Ms. Welch would attempt to prove the acts alleged in her complaint (as mentioned above) and argue that *the reason* for those acts was to harass her and retaliate for her prior filing of a state discrimination claim. Conversely, in the state proceeding, Ms. Welch *could have* defended against DCFS's allegation that she was discharged for engaging in private business activities by using this same evidence to argue that DCFS's alleged justification was a mere pretext for harassment and discrimination. In both actions, the focus was on proving either the legality or illegality of DCFS's conduct and treatment of Ms. Welch. *Cf. Durhan v. Neopolitan*, 875 F.2d at 96. Thus, we conclude that the proof required from Ms. Welch in the state and federal section 1983 actions was essentially the same.[6]

---

5. In *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234 (7th Cir.1986), another case involving the application of Illinois res judicata law, this court stated:

> A defendant ... may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment. *Bernard Bros., Inc. v. Deibler,* 344 Ill.App. 222, 100 N.E.2d 512, 516 (1951). Just as the policies behind the doctrine of *res judicata* are designed to discourage the piecemeal litigation of claims, so are they designed to prevent the piecemeal presentation of defenses. *Id.*

6. Ms. Welch contends that she should not have been required to assert her harassment and discrimination claims in the state proceedings because these claims might not have constituted a defense to her discharge. More specifically, Ms. Welch contends that the CSC could have concluded that there was cause to discharge her because of her activities on behalf of her private adoption agency, but that such a conclusion would not preclude a finding that the defendants engaged in discriminatory conduct against her. *See* Appellant's Br. at 22. This court rejected a similar argument in *Lee v. City of Peoria,* 685 F.2d 196, 200–01 (7th Cir.1982), and we similarly decline to accept Ms. Welch's argument. Ms. Welch contends that her employer undertook a series of actions to harass

Likewise, the "transactional" approach yields the conclusion that the section 1983 suit and the state suit arise " 'from the same transaction, incident, or factual situation.' " *LaSalle*, 856 F.2d at 933 (quoting *Hagee*, 729 F.2d at 513). Indeed, the facts described above are merely different factual sides of the same coin. Ms. Welch argues that these facts occurred for one reason (a discriminatory motive); the defendants argue that the same facts occurred for a different reason (just cause to dismiss Ms. Welch). The single factual situation out of which both suits arise is DCFS's conduct toward Ms. Welch that eventually culminated in her discharge. This conduct and the reasons underlying that conduct are relevant as either part of a claim or a *defense* in both the state and federal claims under Counts I and III.[7] Thus, we conclude that, under Illinois law of res judicata, the state circuit court's judgment affirming the propriety of Ms. Welch's discharge would bar both Counts I and III of her federal suit, except to the extent that these counts relate to Ms. Welch's denial of a promotion in September 1983.[8]

### 2. Claims related to the denial of promotion

■ We reach the opposite conclusion regarding Count II of Ms. Welch's amended complaint that alleges she was denied a promotion based solely on her sex. Ms. Welch's complaint that she was denied a promotion stands on a different footing than her claim that she was harassed based on her sex. The denial of Ms. Welch's promotion occurred *prior* to the events that formed six of the seven charges against Ms. Welch in the state discharge review proceedings. *See* Mem. Op. at 6; R. 51, Ex. A at 1–4; *see also Bismarck Hotel Co. v. Sutherland*, 175 Ill.App.3d 739, 125 Ill.Dec. 15, 19, 529 N.E.2d 1091, 1095 (1988) (action that involved claim for rent based on defendant's occupancy of hotel suite for a different period than the period at issue in the first action between the parties constituted a separate cause of action). Thus, under the "proof" test, it would have been of marginal, if any, relevance to Ms. Welch's defense to the charges against her in the state proceedings to offer evidence

---

her for filing a prior discrimination claim. Her employer conversely contends that it took this same series of actions as a legitimate response to Ms. Welch's misconduct. If Ms. Welch could have shown that her employer's actions were not taken for the asserted legitimate reason, but instead were taken to harass her for filing a discrimination complaint, she could have established a complete defense to the discharge action. *See id.*

**7.** Many states recognize that res judicata ought not be invoked when its application would work a manifest injustice. For instance, in *Patzer v. Board of Regents of Univ. of Wisconsin Sys.*, 763 F.2d 851 (7th Cir.1985), applying Wisconsin law, we declined to apply res judicata when it would have barred a plaintiff who already had been successful in establishing his discrimination claim from supplementing his recovery with relief not available at the time plaintiff initiated his state action. *Id.* at 853–58.

While Illinois also recognizes the exception for manifest injustice, *see Benton v. Smith*, 157 Ill.App.3d 847, 109 Ill.Dec. 884, 889–90, 510 N.E.2d 952, 957–58 (1987), we face no such situation here. There is no claim that the facts were unknown to the plaintiff and, as we discuss at length in the next section, the CSC could entertain such a claim. *Cf. Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376, 1382–83 (11th Cir.1988) (res judicata held not to bar school

principal's discrimination claim where alleged instances of disparate treatment of similarly situated principals were unknown to the plaintiff at the time of the state proceedings and there was no evidence that the state tenure commission could entertain such claims).

**8.** Although we have discussed this issue in terms of Ms. Welch's section 1983 claim under Count I, this analysis is equally applicable to plaintiff's Title VII claims under Count III, which merely realleges the facts in Count I. State courts have concurrent jurisdiction over Title VII claims. *Yellow Freight Sys., Inc. v. Donnelly*, —— U.S. ——, 110 S.Ct. 1566, 1567, 108 L.Ed.2d 834 (1990). The same is true of section 1983 claims. *Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980). We note, however, that under Illinois preclusion principles, it is not essential that Ms. Welch did not bring a Title VII discrimination claim *per se* in order for res judicata to apply. *See Hagee*, 729 F.2d at 514 (under important "corollaries" to Illinois res judicata doctrine, the mere alteration of claims for relief or theories of recovery does not prevent the application of res judicata).

Ms. Welch's claims in Count II, related to her denial of a promotion, are treated *infra*. Because we are reversing the grant of summary judgment as to the promotion claims, we exclude the promotion claims in Counts I and III from our affirmance of the district court above.

that she was denied a promotion *before* the occurrence of almost all of the alleged acts that formed the basis for her discharge. Conversely, the vast majority of the dismissal charges would not be relevant to a Title VII claim based on a denial of a promotion in 1983 because nearly all of the alleged events giving rise to these charges occurred *after* the alleged denial of a promotion. Thus, because the majority of events that formed the proof in the discharge proceeding would not be relevant to a federal action based on a discriminatory failure to promote Ms. Welch in September 1983, we conclude that these are two separate causes of action under the "proof" test.

The conclusion is even clearer under the "transactional" test. Unlike the situation in which the harassment and discharge allegations are flip sides of the same factual coin, the September 1983 denial of a promotion and the 1984 and 1985 events that allegedly resulted in Ms. Welch's discharge are two distinct factual situations. Any facts relevant to the denial of Ms. Welch's promotion occurred by 1983, and the denial of the promotion ended that transaction. On the other hand, nearly all of the facts pertinent to the discharge action (including the alleged acts of harassment that Ms. Welch could raise in defense) occurred after and apart from DCFS's decision not to promote her. We therefore conclude that, under Illinois law, Ms. Welch's claim under Count II that she was denied a promotion in 1983 based on her sex is a separate cause of action from the state discharge review proceedings and is not barred by res judicata.

### D. *Full and Fair Opportunity to Litigate*

■ Even though we have concluded that the Illinois law of res judicata would bar Counts I and III to the extent described above, federal due process requires that res judicata not apply if Ms. Welch did not have a full and fair opportunity to litigate her discrimination claims in the state proceedings. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1896–98, 72 L.Ed.2d 262 (1982); *Leal v. Krajewski*, 803 F.2d 332, 334 (7th Cir.1986).[9]

■ Ms. Welch contends that she did not have a "full and fair" opportunity to raise her discrimination and harassment claims in the state proceedings. She asserts that it is at least "unclear" whether she could have raised her discrimination claims in the state proceedings. She further argues that the CSC lacked jurisdiction over the discrimination claims and contends that, under the administrative review procedure in the state circuit court, she was not allowed to raise any new matters that were not presented to the CSC.

We disagree with Ms. Welch's contention that she could not have raised her harassment and discrimination claims before the CSC. In *Fox v. Civil Serv. Comm'n*, 66 Ill.App.3d 381, 23 Ill.Dec. 174, 177–78, 383 N.E.2d 1201, 1204–05 (1978), the CSC in a discharge hearing allowed an employee to offer evidence of discrimination against her on the job (including evidence of prior discrimination suits she had filed against her employer) in order to support her contention that her employer's discharge action amounted to discriminatory and selective enforcement of work rules. In *Coler v. Redd*, 100 Ill.App.3d 992, 56 Ill.Dec. 427, 427 N.E.2d 622 (1981), DCFS filed a petition before the CSC in which it sought the discharge of one of its employees. Before the CSC, the employee defended the charges against him by arguing that these charges were merely a pretext to disguise

---

**9.** It also should be noted that, under Illinois law, res judicata cannot apply unless the party against whom res judicata is asserted had a full and fair opportunity to litigate its claims. *See Benton v. Smith*, 157 Ill.App.3d 847, 109 Ill.Dec. 884, 889, 510 N.E.2d 952, 957 (1987). We believe, however, that our conclusion that Ms. Welch did have a full and fair opportunity to litigate her discrimination claims in the state proceedings satisfies both due process, as required by *Kremer*, 456 U.S. at 480–81, 102 S.Ct. at 1896–98, and Illinois law, *see Fried v. Polk Bros., Inc.*, 190 Ill.App.3d 871, 138 Ill.Dec. 105, 109, 546 N.E.2d 1160, 1164 (1989) (whether a party has had a full and fair opportunity to litigate depends on whether he was denied a procedural, substantive, or evidentiary opportunity to be heard on the issue).

a campaign of harassment against him. *Id.* 56 Ill.Dec. at 428–29, 427 N.E.2d at 623–24. The CSC believed the employee's argument and concluded that the charges against the employee were indeed a pretext. *Id.* 56 Ill.Dec. at 429, 427 N.E.2d at 624. Although these findings were reversed by the Appellate Court of Illinois, *Coler* illustrates that, contrary to Ms. Welch's suggestion, an employee may raise claims of discrimination or harassment in a discharge action before the CSC. Likewise, in *Strobeck v. Illinois Civil Service Comm'n,* 70 Ill.App.3d 772, 26 Ill.Dec. 911, 915–16, 388 N.E.2d 912, 916–17 (1979), the Appellate Court of Illinois addressed an employee's claim that his discharge violated equal protection. This argument apparently was raised before the CSC. *See id.* 26 Ill.Dec. at 916, 388 N.E.2d at 917 (Perlin, J., dissenting) (stating that he could not "agree with the rationale of the [Civil Service] Commission in its attempt to justify the selective dismissal on the basis that the Department could not function if all of the guilty persons were to be equally punished").

This court's decision in *Jones v. City of Alton,* 757 F.2d 878 (7th Cir.1985), supports the conclusion that discrimination claims can be relevant and admissible in proceedings before the Illinois CSC in determining whether there was "cause" for a discharge. *See Id.* at 882. In *Jones,* a fairly analogous factual situation to the one at hand, this court refused to give preclusive effect to an Illinois state court's judgment on grounds that a discharged employee had not had a full and fair opportunity to litigate his discrimination claims in the state proceedings.[10] Although the employee had attempted to raise his discrimination claims in a hearing before the city CSC, the CSC apparently had excluded the discrimination claims as irrelevant to a determination of the propriety of the discharge, and this determination had been affirmed by both an Illinois circuit and appellate court.[11] On appeal from the federal district court, where the plaintiff's section 1983 and Title VII claims had been dismissed as barred by collateral estoppel and res judicata, this court held that the state court judgments could not be given preclusive effect because the CSC and the state circuit court, by concluding that the plaintiff's claims were irrelevant to his discharge action, *erroneously* had denied the plaintiff a full and fair opportunity to litigate his claims.

**10.** In *Jones,* discharge proceedings were brought against a black police officer before the Civil Service Commission of the City of Alton, Illinois. The basis for the discharge action was an allegation that the officer had been caught shoplifting in a local department store. At the CSC hearing, the officer attempted to introduce evidence that other white officers who had been involved in similar types of theft had not been recommended for discharge. 757 F.2d at 880. The CSC, however, excluded this evidence without explanation and determined that there was cause for the officer's discharge. This determination was affirmed by both an Illinois circuit court (which concluded that plaintiff's proffered evidence was "irrelevant") and appellate court. *Id.* at 881.

During the pendency of the state proceedings, the officer began pursuit of a federal remedy. He eventually received a right to sue letter from the Equal Employment Opportunity Commission and commenced an action against the City and the CSC under both Title VII and § 1983. By the time the plaintiff initiated his federal action in 1981, the Illinois appellate court had rendered its decision and the Supreme Court of Illinois had denied the plaintiff's petition for leave to appeal. The defendants moved to dismiss the federal suit on grounds that it was barred by either res judicata or collateral estoppel. A panel of this court disagreed with the defendants and held that Illinois would not give preclusive effect to the state courts' treatment of the discrimination issue. *Id.* at 886. The court determined that the defendants had not met their "heavy burden of showing with clarity and certainty" that the discrimination issue either was or could have been decided by the prior judgment. *Id.* at 886. The court also concluded that, although the officer had tried to raise his discrimination claims before both the CSC and the circuit court, these bodies erroneously had concluded that the discrimination claims were irrelevant to the discharge action. *Id.* Thus, according to the court, the application of preclusion would have been inequitable or unjust because the party against whom preclusion was asserted did not have a full and fair opportunity to litigate the issue and because the defendants failed to meet their burden of showing that the issue either was or could have been decided in the prior action. *Id.*

**11.** As the panel noted in *Jones,* the appellate court's affirmance of the CSC's refusal to consider the evidence of discrimination was somewhat cryptic. *See Jones,* 757 F.2d at 881–83.

In determining that the CSC's refusal to hear the plaintiff's discrimination claims was erroneous, the *Jones* court noted that, on prior occasions, the CSC and the Illinois courts that have reviewed the CSC's determinations have considered discrimination claims in determining whether there was "cause" for a discharge. *See id.* at 882 (citing *Fox v. Civil Serv. Comm'n*, 66 Ill. App.3d 381, 23 Ill.Dec. 174, 383 N.E.2d 1201 (1978)). Thus, *Jones* seemed to consider the refusal by the Alton CSC to consider the discrimination claims to be an aberration. Moreover, the *Jones* court distinguished its facts from those of· *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir.1982), where the court concluded that a plaintiff who did not raise his discrimination claims in a forum where he *could have* raised those claims was precluded from raising those claims in a federal action. *See* 757 F.2d at 887 (citing *Lee*, 685 F.2d at 200).

In sum, we believe that it is clear that the CSC could entertain Ms. Welch's claims of discrimination in defense of the discharge procedure.[12] The fact that Ms. Welch did not avail herself of the opportunity to litigate her discrimination claims before the CSC and on administrative review in the state courts does not insulate her claims from the effects of res judicata. As the Supreme Court stated in *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 485, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), a party's failure "to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." Moreover, the fact that state court review of the CSC determination is less than a *de novo* review does not undermine the preclusive effect of the state court judgment from a due process perspective. *See id.* at 481 n. 21, 102 S.Ct. at 1896–97 n. 21.[13] We

12. We are aware that, in *Mein v. Masonite Corp.*, 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985), the Illinois Supreme Court said that the Illinois Human Rights Act "with its comprehensive scheme of remedies and administrative procedures," was to be, through the Human Rights Commission, "the exclusive source of redress for alleged human rights violations." *Id.* 92 Ill.Dec. at 504, 485 N.E.2d at 315. However, this statement was later clarified in *Police Pension Fund of Urbana v. Illinois Human Rights Comm'n*, 141 Ill.App.3d 447, 95 Ill.Dec. 759, 765, 490 N.E.2d 232, 236 (1986):

We have determined that the broad statement regarding the Act being the exclusive source for redress for human rights violations set forth in *Mein* is not applicable here. We believe that the supreme court in *Mein* was simply stating that a person cannot bring an original action grounded on a violation of the Illinois Human Rights Act in the circuit court. We read *Mein* as standing for the proposition that the Act precludes direct access to the circuit courts for redress of civil rights violations; however, we do not believe that *Mein* is controlling in this case, where another law directs another body to make a determination which necessarily calls into play the subject matter of "human rights."

In short, the Act simply provides that courts "have no jurisdiction to hear independent actions for civil rights violations." *Mein*, 92 Ill. Dec. at 504, 485 N.E.2d at 315.

In *Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376 (11th Cir.1988), a black principal of an elementary school who had been transferred appealed this decision to the state tenure commission, which reversed the transfer. The com-

mission's decision was in turn reversed by the state circuit court, and the state tenure commission appealed to the state court of civil appeals, which affirmed the circuit court's decision to uphold the transfer. The plaintiff then filed a Title VII and § 1983 action in federal court, alleging that his transfer was racially motivated. The district court held that plaintiff's suit was precluded. On appeal, the Eleventh Circuit held that, although plaintiff's transfer hearing and his Title VII claim were the same cause of action for purposes of Alabama res judicata, plaintiff's federal claims were not barred because there was not a sufficient basis for concluding that plaintiff could have raised his discrimination claims before the state tenure commission. In reaching this conclusion, the court noted that it was unaware of any Alabama tenure commission that had considered racial discrimination claims. 849 F.2d at 1382. In this case, by contrast, we already have noted that discrimination charges have been raised before the Illinois CSC. Moreover, the *Carlisle* court noted that its conclusion was fortified by the fact that the plaintiff did not find out about an alleged instance of disparate treatment of a similarly situated white principal until *after* the tenure commission hearing. The court therefore noted that, as a practical matter, this claim was not one that "could have been brought" before the state tenure commission. *Id.* at 1382.

13. *But cf. Scroggins v. State of Kansas*, 802 F.2d 1289 (10th Cir.1986). Under facts similar to those at issue here, the Tenth Circuit concluded in *Scroggins* that state court review of a state civil service board determination did not bar Title VII and § 1983 actions because it determined that plaintiff had not had a full and fair

conclude that Ms. Welch had a full and fair opportunity to raise her harassment and discrimination claims initially before the CSC, and then on appeal to the state circuit court.

## Conclusion

For the reasons stated above, the district court's grant of summary judgment on Counts I and III is affirmed, except for that portion of Counts I and III that allege that the defendants discriminatorily denied the plaintiff a promotion. The grant of summary judgment on Count II is reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.

opportunity to litigate his claims in the state proceedings. Among its reasons for concluding that plaintiff had not been afforded a full and fair opportunity to litigate were the fact that the proceedings before the agency were "quasi-judicial" proceedings (e.g., the rules of evidence did not apply before the civil service board), and the fact that state court review of the agency determination was limited. *Id.* at 1292–93.

Although Ms. Welch cannot complain that she actually was denied a procedural opportunity in the CSC proceeding to present her claims (because she made no effort to present them there), it is worth noting that, in the CSC hearing, the parties were represented by counsel, were af-

forded an opportunity to present testimony, and were allowed to conduct cross- and redirect examination. Moreover, although agency decisions in Illinois normally will not be reversed for "failure to observe the technical rules of evidence," Ill.Rev.Stat. ch. 110, ¶ 3–111(b), such failure will constitute grounds for reversal if the failure "materially affected the rights of any party and resulted in substantial injustice to him or her." *Id.; see also Russell v. License Appeal Comm'n*, 133 Ill.App.2d 594, 273 N.E.2d 650, 653 (1971) (because the rule against hearsay is "not merely a technical rule of evidence," hearsay evidence is not admissible in an administrative proceeding).