(No. 51700.- ▊▊▊▊▊▊▊)

DELBERT HUGHEY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Vernois, Inc., Division of Locke Stove Co., Appellee).

*Opinion filed September 19, 1979.*

578

Hanagan & Dousman, of Mt. Vernon, for appellant.

Keefe & De Pauli, P.C., of East St. Louis, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On May 22, 1972, Delbert Hughey filed an application for adjustment of his claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.1 *et seq.*) alleging disability resulting from an accidental injury on September 7, 1971, arising out of and in the course of his employment by Vernois, Inc., Division of Locke Stove Co. An arbitrator for the Industrial Commission heard the case in December 1972 and, in an order dated January 29, 1973, found claimant failed to establish "that he sustained an accidental injury arising out of and in the course of his employment by the Respondent" and denied compensation. No review of that decision was sought. Instead, claimant on March 2, 1973, filed a second application for adjustment of claim alleging "repetitive trauma" on April 27, 1972. The same arbitrator heard this case and again found claimant had failed to establish an accidental injury arising out of and in the course of his employment and denied compensation. That decision was affirmed on review by the Industrial Commission. The circuit court of Jefferson County reversed, finding claimant "sustained repetitive injuries resulting in or aggravating a ruptured intervertebral disc, and that such injuries arose out of and in the course of his employment," and remanded to the Commission for the purpose of determining an appropriate award. The Commission did so, and respondent sought *certiorari* with the result that the same circuit judge, reversing his earlier position, held that the original action of the arbitrator and Commission in denying compensation had been correct. Claimant has appealed directly here from that judgment pursuant to our Rule 302(a). 58 Ill. 2d R.

302(a).

The dispositive issue is whether the unappealed, and therefore conclusive (Ill. Rev. Stat. 1971, ch. 48, par. 138.19(b)), denial of compensation contained in the January 29, 1973, order of the arbitrator was *res judicata* as to the later claim. We believe that it was, for the second application for adjustment of claim simply sought to recover, on a different theory, compensation for the same expenses and disability for which recovery was initially sought.

The record before us contains the evidence at the hearings on both applications for adjustment of claims. It indicates that claimant apparently had been employed in respondent's foundry department at one time but was working in the mounting department in August 1971, when a layoff in that department occurred. Under the plant rules, his seniority was not sufficient to retain his place in the mounting department; it was, however, sufficient to enable him to "bump" an employee in the foundry. The rules gave claimant a 10-day trial period within which to decide whether to stay in the foundry or to accept the layoff, in which event he could secure unemployment compensation.

At the hearing on the first application claimant testified that, while lifting castings in the foundry department on September 7, 1971, he "felt a give in his right back, the hip part there, or lower lumbar," and slumped down. The assembly line was stopped, he said, until another man took his place. When asked by his foreman whether he wanted to see a doctor, claimant declined. He testified that, after resting 20 or 30 minutes, he returned to work lifting lighter castings even though his back hurt. He further stated that he worked 9 days thereafter, then on the 10th day told the personnel manager that he wanted to see a doctor about his injury and accept the layoff.

Claimant did not consult a doctor until the following May, but did draw unemployment compensation that October, November and part of December. On December 9 he returned to work in the mounting department and continued there until the 16th, when the plant closed for the holidays. He resumed work when the plant reopened in January and continued working until April 28, during which period his back pain kept increasing. He then saw the family doctor, who hospitalized him for X rays and tests, which resulted in the removal of a herniated disc in May. He returned to work August 14, and was still working at the time of the hearing. He testified he was getting stronger although "my leg still bothers me." It is undisputed that claimant never requested that the company send him to a doctor. It is also admitted that on September 23 he had been in an altercation in which he had given another man "a whaling." When asked whether his back was injured in the fight, claimant replied, "He never touched me."

The plant personnel manager denied ever being told by claimant or anyone else that claimant had injured his back at work, but did recall that claimant had told him in their September conversation that he wanted a layoff because his back was hurting him. Claimant's foreman testified he could recall no complaint by claimant nor any occasion when the assembly line was stopped until a replacement for claimant could be secured.

While the second application for adjustment of claim makes no reference to a September 1971 injury, much of the evidence at the hearings on the two applications, including the medical testimony which consisted solely of the deposition of Dr. William R. Stackable taken after the conclusion of the first hearing, and hospital and medical bills, was identical, as was the disability for which compensation was sought. Although the testimony in the second case dwells at greater length on the aggravation of

the September 7 injury by the "repetitive trauma"—the bending, twisting and turning—involved in lifting the castings, it is entirely clear that the cause of action, if any existed, was the same in both instances: a right to compensation for the same hospital and medical expenses incurred in connection with, and the same disability resulting from, the same allegedly employment-related injury—a ruptured disc. Emphasizing different factors as having caused that disability does not transform that cause of action into a new or different one when those factors were all present and, in the exercise of ordinary diligence, could have been known at the time the original claim was filed. It is not suggested that there were available at the time the second application was heard either new witnesses or new evidence not equally available when the first application was heard.

Few rules are more essential or more firmly embedded in our jurisprudence than that of *res judicata*. It is a judicially created doctrine resulting from the practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose. Its scope has been summarized as follows: "[T]he conclusiveness of the judgment in such case [the prior action] extends not only to matters actually determined, but also to other matters which could properly have been raised and determined therein. This rule applies to every question relevant to and falling within the purview of the original action, in respect to matters of both claim or grounds of recovery, and defense, which could have been presented by the exercise of due diligence." 46 Am. Jur. 2d *Judgments* sec. 417, at 585-86 (footnotes omitted). " "*** The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or

demand, but as to any other admissible matter which might have been offered for that purpose." [Citation.] The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. [Citations.]' " (*Sea-Land Services, Inc. v. Gaudet* (1974), 414 U.S. 573, 578, 39 L. Ed. 2d 9, 17-18, 94 S. Ct. 806, 812, quoting *Commissioner v. Sunnen* (1948), 333 U.S. 591, 597, 92 L. Ed. 898, 905-06, 68 S. Ct. 715, 719.) " '*** The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also extends to any other matter which might have [been] raised and determined in it.' ", (*La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 529-30, quoting *Harvey v. Aurora & Geneva Ry. Co.* (1900), 186 Ill. 283, 294. See also *Smith v. Bishop* (1962), 26 Ill. 2d 434; *Midlinsky v. Rubin* (1930), 341 Ill. 378, 386-87; *Phelps v. City of Chicago* (1928), 331 Ill. 80, 85.) "It is well settled that the doctrine of *res judicata* extends not only to matters actually determined in the former suit, but also embraces all grounds of recovery. and defense involved and which might have been raised. By assigning new reasons for holding the agreement invalid, which existed at the time that decision was rendered, the parties cannot relitigate the question settled by the prior decree. [Citations.] " *Lee v. Hansberry* (1939), 372 Ill. 369, 374-75, *rev'd on other grounds* (1940), 311 U.S. 32, 85 L. Ed. 22, 61 S. Ct. 115.

The judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*