925 F.2d 1468
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Paul E. ANDERSON and Franklin L. Kenyon, Plaintiffs-Appellants,
v.
PALESTINE TOWNSHIP, a body politic corporate, Dave Thompson,
Pete Remmert, Virginia Garrels, James Wilkey, Wanda Colburn,
James Hunt, Clara Jakobs, Ronald Ulrich, Roger Miller, Larry
Leiken, Richard Leiken, Harold Imhoff, Kurt Heyungs and Fred
Schultz, Jr., Defendants-Appellees.
 No. 90-1010.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 5, 1990.
Decided Feb. 26, 1991.
 
 Before CUMMINGS, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A property dispute over a corner of a lot worth $10[1] culminated in the filing of this federal civil rights action. Paul Anderson and Franklin Kenyon allege that their neighbors acted in concert with various officials of Palestine Township to deprive them of their constitutional rights in violation of 42 U.S.C. Sec. 1983. Anderson and Kenyon seek more than one million dollars in damages and attorney's fees under 42 U.S.C. Sec. 1988. The district court dismissed the civil rights suit, reasoning alternatively that a prior state court action barred the federal suit and that the complaint failed to state a cause of action. A pendent state claim for malicious prosecution was also dismissed. We affirm.
 
 I.
 
 2
 We consider the facts in the light most favorable to the plaintiffs, as is necessary when reviewing a dismissal order. Paul Anderson and Franklin Kenyon are co-owners of an 80-acre lot in Palestine Township. In September 1986, Roger Miller and Ronald Ulrich bought an adjacent lot from Pete Remmert, the township's Supervisor. The nearest township road to Remmert's lot was on the far side of one corner of the acreage owned by Anderson and Kenyon. In November 1986, Miller cut a fence on the Anderson/Kenyon property which obstructed access to the road and threatened Kenyon with violence. Over the next six months, plaintiffs' fence was repeatedly taken down, usually by unknown people, and rebuilt by Kenyon and Anderson.
 
 
 3
 Palestine Township became involved when Remmert, Miller, Ulrich and their attorney sought the intervention of Dave Thompson, the Palestine Township Road Commissioner. In February 1987, Thompson informed Anderson and Kenyon that the fence was located on a Palestine Township right-of-way and thus constituted a safety hazard. When Anderson and Kenyon failed to take the fence down, Thompson destroyed the fence. Thompson removed the fence three times, on March 4, 1987, March 6, 1987, and March 24, 1987.
 
 
 4
 On March 31, 1987, Palestine Township brought a criminal action against Kenyon pursuant to Ill.Rev.Stat. ch. 121, Sec. 9-117 (1989). It sought an injunction requiring Kenyon to remove the fence. Miller and Ulrich brought a separate suit claiming that they had acquired an easement by necessity and seeking an injunction which would prevent Kenyon from denying them access to his land. The state circuit court consolidated the two cases and Kenyon filed a counter-petition. Kenyon asked that the state court enjoin Dave Thompson, Palestine township and their agents from attempting to tear down his fence. He claimed that the fence at issue was located in neighboring Montgomery Township, not in Palestine Township, and thus that Thompson had no authority to force its removal. He also asked for attorney's fees pursuant to Ill.Rev.Stat. ch. 110, Sec. 2-611, alleging that the Palestine Township suit had been filed "maliciously, vexatiously and without an actual belief in the merit of the allegations" asserted therein. R. Item 16, Exh. 6.
 
 
 5
 The court dismissed Palestine Township's petition after considering evidence which suggested that the fence was in fact located in Montgomery Township. Kenyon continued to pursue his counter-petition against Palestine Township. In addition, the court permitted Montgomery Township to intervene and Kenyon filed a counter-petition for injunctive relief against Montgomery Township. He claimed that the Montgomery Township highway commissioner also had trespassed onto the Anderson/Kenyon property, thereby depriving Kenyon of his property rights. In August 1987, Kenyon argued in the Answer to Intervenor's Verified Complaint that Miller and Ulrich had "sought out" the aid of the two townships in order to press their easement claim. He characterized the suit by Montgomery Township against him as a "subterfuge" designed to assist Miller and Ulrich.
 
 
 6
 Ultimately, on March 2, 1989, the circuit court entered an order prohibiting Palestine Township, Miller and Ulrich from harming the fence maintained by Kenyon and Anderson.[2] At trial Dave Thompson had testified that he knew that the Anderson/Kenyon property was beyond his jurisdiction, even at the time he initially removed the fence. The court also ordered Palestine Township and Dave Thompson to pay attorney's fees after finding that the township had submitted false pleadings. The property claims were resolved by the court's finding that the land on which the fence stood was indeed owned by Anderson and Kenyon. The court also held, however, that Montgomery Township had acquired a right-of-way through one portion of the Anderson/Kenyon lot. It ordered Anderson and Kenyon to allow Montgomery Township access to this portion of their land.
 
 
 7
 Anderson and Kenyon subsequently brought this action in federal court, seeking damages under Section 1983. They allege that township officials and private citizens formed a conspiracy to deprive them of their Fourth Amendment right to be free from unreasonable seizures and their substantive due process rights. Among those named as defendants were Miller and Ulrich, Palestine Township, Dave Thompson, various trustees and agents of Palestine Township, and friends and relatives of Miller and Ulrich. The district court dismissed the suit with prejudice. It found that res judicata principles barred the Section 1983 claim because it could have been pled as part of the counter-petition in the prior state court action. Alternatively the court held that Anderson and Kenyon had failed to state a constitutional claim.
 
 II.
 
 8
 Under 28 U.S.C. Sec. 1738, federal courts must give a state court judgment the same preclusive effect that would be accorded by that state's law. Allen v. McCurry, 449 U.S. 90. In Illinois, "a final judgment on the merits rendered by a court of competent jurisdiction bars the same parties or privies from relitigating matters that were raised or could have been raised in the prior litigation." La Salle Nat'l Bank v. County of Du Page, 856 F.2d 925, 930 (7th Cir.1988), certiorari denied, 489 U.S. 1081. In order for claim preclusion[3] to apply, the federal and state suits must present the same cause of action and involve the same parties or their privies. Id. at 931. Kenyon and Anderson argue that neither prerequisite is met in this case. They claim that their state court counter-petition for injunctive relief involved a different cause of action than their present suit and that new defendants have been named in their federal suit.
 
 
 9
 Illinois state courts have used two different tests to determine whether successive cases present the same "cause of action." Hagee v. City of Evanston, 729 F.2d 510 (7th Cir.1984). The "proof" approach asks whether the same evidence would sustain both actions, while the "transactional" approach focuses on whether the second action arises out of the "same transaction, incident or factual situation" as the first. Hagee, 729 F.2d at 513.
 
 
 10
 In Hagee, this Court noted that the labels of the differing tests are less important than the principles that lay behind them. From conflicting Illinois case law it is possible to glean basic policy considerations. First, the "conclusiveness of the judgment in [a prior action] extends not only to matters actually determined, but also to other matters which properly could have been raised and determined therein." Hughey v. Industrial Comm'n, 76 Ill.2d 577, 582, 394 N.E.2d 1164, 1166 (1979). Second, this principle is "tantamount to a rule requiring parties to consolidate all closely related matters into one suit." Hagee, 729 F.2d at 514. Such a rule in effect bars a party from maintaining "two suits based on the same set of facts by the simple expediency of limiting the theories of recovery advanced in the first." Id.
 
 
 11
 On the basis of these rules, the present Section 1983 suit is the same "cause of action" raised in Kenyon's Illinois state court counter-petition. Both cases involve the same set of facts and issues. The state court suit, though it began as a simple criminal action against Kenyon, evolved into a combined criminal/civil matter[4] which resolved the questions of the proper ownership of the property, the right of Kenyon and Anderson to maintain their fence, and the respective jurisdictions of Palestine and Montgomery Townships. This suit raises exactly the same questions. The only added dimension in the federal suit is damages. The plaintiffs believe that if all questions are resolved in their favor as they were in state court, they have established that defendants violated their constitutional rights are thus can claim damages. We stated in Hagee that a reincarnation of a first suit brought under a different legal theory and requesting a different kind of relief will be barred. 729 F.2d at 514. This case, like Hagee, presents such a reincarnation.
 
 
 12
 Plaintiffs argue that their Section 1983 suit was not possible before Dave Thompson revealed in the midst of the state court trial that he knew the land was not in his jurisdiction. According to plaintiffs, it was this late event which "clearly established that Palestine Township officials knew that their complaint was spurious, and maliciously destroyed [plaintiffs'] property." Br. at 11.
 
 
 13
 Plaintiffs' own pleadings in state court undermine this claim. Even before the state court trial began, plaintiffs knew the facts that would come to comprise their core allegations in federal court. Kenyon's original counter-petition against Palestine Township states that "the fence * * * is not located in Palestine Township, but just inside Montgomery Township." R. Item 16, Exh. 6. In Kenyon's Answer to Montgomery Township's Verified Complaint, he alleged the same conspiracy he alleges here. Calling the township's action a "subterfuge," he accused Miller and Ulrich of seeking aid from both townships solely to further their private aims. R. Item 16, Exh. 13. In sum, plaintiffs have been alleging from the start of the state court suit that Palestine Township knowingly interfered with property outside its jurisdiction. Dave Thompson's admission on the stand may have raised the quality of evidence which would be available to plaintiffs in a Section 1983 suit, but it hardly gave them a cause of action of which they were previously unaware.
 
 
 14
 The more difficult question is whether the parties to this suit are identical to those in the last. Plaintiffs argue that the defendants are not previous parties or their privies.[5] In Kenyon's amended state court counter-petition, he named Dave Thompson, Palestine Township, Miller and Ulrich as counter-defendants. R. Item 16, Exh. 15. The same defendants are named here. In addition, plaintiffs have sued others members of the so-called conspiracy to deprive them of their constitutional rights: Pete Remmert (Palestine's elected Supervisor), Miller, Ulrich, various Palestine trustees (Wanda Colburn, James Wilkey, Clara Jakobs, James Hunt), Virginia Garrels (the Palestine clerk), Richard Leiken (Palestine's attorney), Larry Leiken (Richard's partner), Harold Imhoff (a private surveyor employed by Miller and Ulrich), Kurt Heyungs (Miller's cousin), and Fred Schultz, Jr. (Heyungs' friend). The trustees and employees of Palestine are sued in both their individual and official capacities.
 
 
 15
 Plaintiffs clearly are barred from suing Palestine Township, Dave Thompson, Miller and Ulrich, who were parties to the state court action.[6] Because under Illinois law a governmental body and its officers and agents are in privity, this suit may not proceed against the trustees, Garrels, and the Leikens. Mandarino v. Pollard, 718 F.2d 845, 850 (7th Cir.1983), certiorari denied 409 U.S. 830; Consolidated Distilled Products, Inc. v. Allphin, 73 Ill.2d 19, 382 N.E.2d 217 (1978). Harold Imhoff cannot be sued because he was an agent of Miller and Ulrich. Towns v. Yellow Cab Co., 73 Ill.2d 113, 382 N.E.2d 1217 (1978).
 
 
 16
 The two remaining defendants, Heyungs and Schultz, are said to have assisted the private parties Miller and Ulrich in tearing plaintiffs' fence down on one occasion. The complaint fails to state a cause of action against these two. Private parties can be liable under Section 1983 only when they have been jointly engaged with public officers in the denial of civil rights. Adickes v. S.H. Kress & Co., 398 U.S. 144. Plaintiffs have failed to allege any facts which suggest that Heyungs and Schultz came to a "meeting of the minds" with public officers to deprive Kenyon and Anderson of their constitutional rights.[7] Instead, they rely on a mere allegation of conspiracy which cannot survive a motion to dismiss. Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1206 (7th Cir.1980).
 
 
 17
 Plaintiffs might have argued that the suits against the township officials, at least in their individual capacities, should survive the application of res judicata principles. We interpret Illinois res judicata law to bar both official capacity and individual capacity suits against officers when previously the governmental entity has been sued. This is in accord with our practice in Mandarino, 718 F.2d at 845. See also Warren v. McCall, 709 F.2d 1183 (7th Cir.1983). Recently in Charles Koen & Assoc. v. City of Cairo, 909 F.2d 992, 999 (7th Cir.1990) a panel of this Court criticized Mandarino in a footnote and questioned whether Illinois law holds individuals sued in their individual capacities to be privies of the city or township for which they work. The Koen court was able to avoid passing judgment on the individual capacity issue, and we consider the argument to have been waived in this case. Plaintiffs did not make any special appeal for the individual capacity suits in their briefs or at oral argument, nor did they call attention to this legal issue or the relevant case law. We are not obligated to construct legal arguments or do research for the parties. Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir.1986), certiorari denied, 479 U.S. 1056.
 
 
 18
 The plaintiffs had a full and fair opportunity to raise their Section 1983 claim in the previous state court action. Their claim is barred and was properly dismissed. The pendent malicious prosecution claim, then, was also properly dismissed. Our finding makes it unnecessary to reach the constitutional questions. The district court order is affirmed.
 
 
 
 [1]
 See R. Item 16, Exh. 19 at 4
 
 
 [2]
 Anderson had been added as a party during the thirty-day trial
 
 
 [3]
 The term res judicata is used interchangeably with claim preclusion in this opinion. Collateral estoppel is not relevant to the case
 
 
 [4]
 Plaintiffs wisely do not argue that Illinois rules of procedure kept them from bringing their Section 1983 suit as part of the state court action. They do contend that plaintiffs should not be obligated to bring legal claims with requests for equitable relief in state court. Illinois, however, provides a means for this to be done. See Ill.Rev.Stat. ch. 110A, s. 135 (1989)
 
 
 [5]
 The fact that the plaintiffs are not the same is irrelevant. The state court counter-petition was in Kenyon's name though Anderson was later added as a party in the midst of trial. This action was brought by both Kenyon and Anderson. Because Anderson is Kenyon's privy as a co-owner of the property at issue, Kenyon's earlier suit can preclude Anderson's participation in the present action. See Sweeting v. Campbell, 2 Ill.2d 491, 496, 119 N.E.2d 237, 240 (1954) ("Privity contemplates a mutual or successive relationship to the same property rights which were the subject matter of prior litigation")
 
 
 [6]
 Plaintiffs claim in their brief that they only filed a counter-petition against Thompson and Palestine Township, but their state court pleadings list Miller and Ulrich as counter-defendants. See, e.g., R. Item 16, Exh. 13 & 14. Also, the state court judge in his final order notes that he is granting "the counter petition of Franklin Kenyon for an order prohibiting M & U [Miller and Ulrich] from damaging, molesting, tearing down or attempting to tear down * * * the fences." R. Item 16, Exh. 23
 
 
 [7]
 Plaintiffs offer only scant factual allegations of conspiracy with respect to some of the other defendants. It is not so clear that the Leikens or Imhoff set out in concert with township officials to deprive plaintiffs of their constitutional rights. We need not come to a conclusion about the adequacy of the allegations against such defendants, however, since we have found that they may be excused from this suit on res judicata grounds as agents of other parties