In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1342

THOMAS ABNER,

*Plaintiff-Appellant*,

*v.*

ILLINOIS DEPARTMENT OF
TRANSPORTATION,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 7477—**Ruben Castillo**, *Judge*.

ARGUED SEPTEMBER 12, 2011—DECIDED MARCH 21, 2012

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. The Illinois Department of Transportation ("IDOT" or the "Department") fired Thomas Abner for engaging in disruptive conduct. After exhausting his state administrative remedies, Abner filed this Title VII action contending that he was actually discharged in retaliation for a charge of racial discrimination he had filed against the Department

some years earlier. The district court dismissed the suit, concluding that Abner's claim of retaliation was precluded by a state court's determination, on administrative review of Abner's termination, that his discharge was supported by just cause. We agree and affirm.

Abner was hired by IDOT in 1989. In 2003, following a number of prior disciplinary measures, the Department sought to fire him for fighting in the workplace. He was instead suspended for thirty days pursuant to a "last chance" agreement between his union representative and the Department that stated, among other provisions, that he would be discharged should he engage in similar behavior in the future. In July 2005, Abner became involved in an altercation with a co-worker and a supervisor at an IDOT worksite. Although Abner denied that he made physical contact during the dispute, the other two alleged that he pushed his supervisor.

IDOT initiated discharge proceedings against Abner based on this incident. Abner was given a notice informing him that because he had "engaged in a verbal altercation with [his] co-worker . . . during which [he] pushed [his] supervisor," he was being terminated for violating IDOT's policies forbidding violence and disruptive conduct in the workplace. R. 27-2 at 20. (The 2003 last-chance agreement was referenced by the notice in a summary of Abner's disciplinary history.) After a formal charge to this effect was approved by Illinois' Director of Central Management Services, which is responsible for enforcement of the State's personnel code,

Abner invoked his right to an administrative hearing before the Illinois Civil Service Commission. An administrative law judge ("ALJ") conducted an evidentiary hearing on the charge at which Abner was represented by counsel. Following that hearing, the ALJ issued a recommended decision agreeing that Abner had engaged in an altercation but concluding that his discharge was not warranted. The ALJ's summary of the parties' contentions and the evidence presented at that hearing indicates that although Abner disputed his employer's account of the altercation, including the allegation that he had pushed his supervisor, he did not allege that IDOT was seeking to discharge him in retaliation for a racial discrimination charge he had filed in 2001. Based on the testimony, the ALJ found that Abner had an exchange of words with his co-worker that "quickly escalated into a shouting match complete with threats and posturing that resulted in [his supervisor] getting bumped by Abner." R. 27-2 at 33. The judge noted that "Abner, as the Lead Worker, had the responsibility to prevent such an escalation. Having not only failed that, but actually instigating the escalation, he must bear responsibility for its occurrence. The conclusion is that Abner's conduct that day constituted a violation of Section D 'Disruptive Conduct' [of IDOT's Rules for Employee Conduct]." R. 27-2 at 33 ¶ 5. However, in lieu of discharge, the ALJ, who found that Abner's physical contact with his supervisor was merely incidental and as such did not constitute workplace violence, R. 27-2 at 33-34, proposed that Abner be suspended for 90 days. The Commission affirmed and adopted the ALJ's rec-

ommended decision in full in a final order dated June 15, 2006.

IDOT sought administrative review of the Commission's decision in the Circuit Court of Cook County, challenging the Commission's modification of the discipline imposed for Abner's misconduct from discharge to suspension. Both sides filed briefs as to the propriety of the reduced penalty. Abner, writing pro se, contended that because he had not himself signed the last chance agreement in 2003, and because he was not given proper notice in 2005 that he was being charged with engaging in workplace violence, his termination was not warranted. Again, Abner made no allegation that IDOT's effort to discharge him was retaliatory. R. 27-2 at 93-99. On December 8, 2006, Circuit Court Judge Dorothy Kinnaird issued an order overturning the Commission's decision insofar as it reduced Abner's penalty to a suspension. Reasoning that "the finding of disruptive conduct is sufficient cause for discharge under progressive discipline," the court sustained IDOT's decision to discharge Abner from its employ. R.27-2 at 110. Abner did not appeal the state court's judgment.

Three years later, after obtaining a right to sue letter from the U.S. Equal Employment Opportunity Commission, Abner filed a pro se complaint in federal court alleging that the true reason IDOT fired him was because he had previously accused the Department of racial discrimination in a complaint he filed with the Illinois Department of Human Rights in 2001, which if true made his discharge unlawful under Title VII's anti-retal-

iation provision, 42 U.S.C. § 2000e-3(a). The district court appointed counsel to represent Abner. IDOT then moved to dismiss the complaint, contending among other things that the complaint was barred by the doctrine of res judicata. After reviewing the memoranda and entertaining oral argument from counsel, the court entered an order dismissing the case, reasoning principally that Judge Kinnaird's order finding that Abner's discharge provided sufficient cause for his discharge under IDOT's progressive disciplinary system precluded Abner from attempting to relitigate the validity of his discharge in federal court. R. 30 at 1. The court subsequently denied Abner's motion for reconsideration "for all the reasons contained in this Court's Order of 7/29/10 [dismissing the complaint], as well as, the reasons stated in the Defendant's response [32] to said motion," and dismissed the case with prejudice. R. 34.

Abner contends that the district court's res judicata rationale was flawed.[1] He argues first that his retaliation claim does not arise from the same set of operative facts as the claim he made in the state court. The state litigation, he reasons, was focused on the incident in 2005 with his co-worker and supervisor, whereas the federal claim he makes here is focused on the racial discrimina-

---

[1] No argument is made that the district court erred in not converting the motion to dismiss into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), given that the court relied on documents not attached to Abner's complaint.

tion claim he filed in 2001 and whether that claim animated IDOT's decision to fire him in 2005. Second, Abner asserts that he was not afforded a full and fair opportunity to litigate his retaliatory discharge claim in the state case. Specifically, "[p]laintiff was not discharged until resolution of the state court proceeding in December of 2006. It is logically impossible to bring a retaliatory *discharge* claim until a party has actually *been discharged*." Abner Br. 16 (emphasis in original).

We believe, however, that the district court properly deemed Abner's retaliatory discharge claim precluded by the state court judgment sustaining his discharge. At issue in the state administrative proceeding was whether IDOT had just cause to discharge Abner. Abner's present contention that IDOT fired him in retaliation for his prior charge of race discrimination is, in essence, an assertion that the Department's stated reason for his termination—disorderly conduct—is a pretext for discrimination. As such, it could have been raised as a defense in the administrative proceeding. It was not, however, and consequently the state court judgment deeming his discharge warranted by just cause precludes the retaliation claim he now asserts under Title VII.

The judgment of a state court sitting in review of an administrative agency is entitled to full faith and credit in federal court. 28 U.S.C. § 1738; *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82, 102 S. Ct. 1883, 1897-98 (1982). This means, among other things, that such a judgment will have the same preclusive effect in sub-

sequent litigation as any other judgment rendered by a state court, subject to the law of the state where the judgment was rendered. *Ibid.* If, under that state's law, a prior judgment would be deemed preclusive, and if the party against whom preclusion is sought enjoyed a full and fair opportunity to raise his federal claim in the state proceeding, then a federal court must grant the state judgment preclusive effect. *Ibid.*

Our decision in *Welch v. Johnson*, 907 F.2d 714 (7th Cir. 1990), concluded that a former state employee's charges of workplace discrimination under Title VII and 42 U.S.C. § 1983 were barred by an Illinois state court judgment finding just cause in support of her discharge. Welch filed a federal lawsuit under section 1983 (later amended to invoke Title VII as well) in which she alleged, among other things, that her state employer had subjected her to a series of adverse employment actions which she characterized as an effort to harass her in retaliation for a discrimination complaint she had filed with the Illinois Department of Human Rights. Shortly after she filed the federal suit, Welch's employer fired her, citing the same sorts of grounds as it had for the prior actions that Welch alleged in the federal suit were retaliatory. She then initiated an administrative proceeding challenging her dismissal with the Illinois Civil Service Commission; but in the course of that proceeding, she did not contend that her discharge or any of the events leading up to it constituted harassment or retaliation for her previous discrimination complaint. The Civil Service Commission found that just cause supported her discharge, and the state court

on review concluded that the Commission's determination was consistent with the manifest weight of the evidence.

Applying Illinois res judicata principles, we concluded that the state court's decision sustaining Welch's discharge foreclosed her federal claims of retaliation. The Illinois Supreme Court, we noted, deems a prior judgment conclusive not only to matters that were actually determined in the action resulting in that judgment, but also as to other matters that could have been raised and determined. 907 F.2d at 720 (ultimately quoting *Hughey v. Indus. Comm'n*, 394 N.E.2d 1164, 1166 (Ill. 1979)). That rule applies to every question relevant to and falling within the purview of the original action, including any defense that could have been raised with due diligence. *Id.* (ultimately quoting *Hughey*). The allegations underlying Welch's federal claims could have been raised as a defense to the propriety of her discharge; specifically, Welch could have contended that the cited grounds for her termination were a pretext for harassment and discrimination. *Id.* at 721. In that sense, "the proof required from Ms. Welch in the state and federal section 1983 actions was essentially the same," and the two suits therefore constituted the same cause of action. *Id.* Viewed another way, both the federal suit and the state administrative proceeding arose out of the same transaction, namely the series of events culminating in her discharge. *Id.* at 722. Whether her employer had legitimate reasons to fire Welch, or whether it was discriminating against her in retaliation for her previous complaint, were thus "merely different

factual sides of the same coin." *Id.*[2] And because the case law left no doubt that the state civil service commission could have entertained Welch's allegations of harassment and retaliation, we were satisfied that she had had a full and fair opportunity to pursue those allegations in the state proceeding. *Id.* at 723-26. It was thus appropriate to deem the state judgment as preclusive of her retaliatory discharge claim. *See also Hayes v. City of Chicago*, No. 10-3750, 2012 WL 661676, at *3 (7th Cir. Mar. 1, 2012) (state court's affirmance of police board order that resulted in plaintiff's termination precluded his subsequent Title VII claim alleging that his discharge constituted racial discrimination: "Hayes could have rebutted the Police Board's discharge order with evidence that he was unlawfully terminated based on his race."); *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 637-38 (7th Cir. 2004) (plaintiff's federal claims under Title VII and 42 U.S.C. §§ 1981 and 1983, alleging that police pension board's denial of disability pension benefits constituted retaliation and employment discrimination, amounted to same cause of action as his state-

---

[2] As we noted in *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 637 (7th Cir. 2004), the Illinois Supreme Court, subsequent to our decision in *Welch*, adopted the transactional approach to determining whether two causes of action are the same for purposes of res judicata. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998). This was the second of the two approaches we had discussed in *Welch*. *See also Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011).

court administrative appeal of pension board's adverse decision; res judicata therefore barred federal suit); *Licari v. City of Chicago*, 298 F.3d 664, 665-66 (7th Cir. 2002) (state court's affirmance of denial of disability benefits precluded section 1983 claim that denial violated due process); *Durgins v. City of E. St. Louis, Ill.*, 272 F.3d 841, 843-44 (7th Cir. 2001) (state court review of administrative decision sustaining police officer's discharge precluded section 1983 claim that discharge violated his First Amendment right to free speech); *Davis v. City of Chicago*, 53 F.3d 801, 802-03 (7th Cir. 1995) (proceedings before city personnel board and in judicial review thereof as to validity of plaintiff's suspension and discharge precluded subsequent claim under section 1983 for lost opportunities for overtime and promotion); *Pirela v. Village of N. Aurora*, 935 F.2d 909, 912 (7th Cir. 1991) (state administrative review of discharge proceedings before local board of police and fire commissioners precluded subsequent Title VII claim that discharge constituted race and national origin discrimination); *Button v. Harden*, 814 F.2d 382, 384-85 (7th Cir. 1987) (administrative review of teacher's discharge precluded subsequent suit under section 1983 contending discharge violated teacher's First Amendment rights), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004); *cf. Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) (finding that discharged police officer's federal claims for denial of due process and equal protection were barred by *Rooker-Feldman* doctrine because his alleged injury stemmed directly from state court judgment upholding administrative board's decision to

terminate him); *Durgins*, 272 F.3d at 844 (characterizing *Manley* as "a preclusion decision in *Rooker-Feldman* clothing").

The same logic applies here. The premise of Abner's Title VII suit is that he was fired in retaliation for having previously filed a complaint with the Illinois Department of Human Rights in 2001. But the propriety of his 2005 discharge was litigated in state court: At the final stage of Illinois' scheme of administrative review, Judge Kinnaird upheld IDOT's decision to discharge Abner based on his disruptive conduct in July 2005. Her ruling necessarily established that IDOT had a legitimate, non-retaliatory ground for firing Abner. Abner draws a false distinction when he suggests that the state proceeding concerned the events of 2005 which culminated in his discharge, whereas the federal suit has to do with the discrimination complaint that he filed in 2001. As *Welch* makes clear, the two proceedings implicate two sides of the same coin: Either the true reason for Abner's discharge was his disruptive conduct in 2005 (which was a legitimate, non-discriminatory ground for his termination) or this was a mere pretext for punishing him for his 2001 complaint. 907 F.2d at 722. Only one of these can be true. *Welch* also makes clear that Abner could have raised, in the state administrative proceeding, his contention that IDOT was retaliating against him in seeking his dismissal. This would have been a defense to the charge that IDOT had good cause to fire him. *Id.* at 723-26. Abner's contention that he could not challenge his discharge as retaliatory until the administrative proceeding had reached its conclu-

sion in 2006 and he actually *was* terminated is simply wrong. IDOT's decision to fire Abner is what triggered the administrative proceeding, and the determination whether the Department had good cause to fire him was the focus, if not the entire point, of that proceeding. *See Davis*, 53 F.3d at 803. The record makes clear that Abner was represented by counsel at the hearing before the ALJ, when the factual basis for the Civil Service Commission's and the circuit court's decisions was developed. And although Abner evidently proceeded pro se in the circuit court, the brief he filed reveals him to have been perfectly capable of contesting the validity of IDOT's decision to discharge him. In short, nothing hindered him from raising the contention that IDOT was retaliating against him for his earlier complaint. *Cf. Jones v. City of Alton, Ill.*, 757 F.2d 878, 882-83, 886-87 (7th Cir. 1985) (refusing to grant preclusive effect to state court decision upholding plaintiff's discharge, where local civil service commission, in evident aberration, had excluded plaintiff's claims of discrimination and thus denied him full and fair opportunity to litigate those claims in state proceedings) (cited in *Welch*, 907 F.2d at 724-25). Abner thus had a full and fair opportunity to litigate the propriety of his discharge in state court, and having failed to do so, he is barred from re-litigating the grounds for his discharge in federal court under the guise of Title VII.

We therefore AFFIRM the district court's judgment. In our summary of the proceedings that took place below, we noted that the district court denied Abner's motion for reconsideration and dismissed the case with preju-

dice "for all the reasons contained in this Court's Order of 7/29/10 [dismissing the complaint], as well as, the reasons stated in the Defendant's response . . . to said motion." R. 34. We take the opportunity to gently reiterate that Circuit Rule 50 requires a district court to articulate its reasons for dismissing a claim or granting summary judgment, and summarily adopting the reasons set forth in a party's memorandum as the court's own rationale does not comply with this requirement. *Pasquino v. Prather*, 13 F.3d 1049, 1051 & n.3 (7th Cir. 1994); *Johnson v. McCann*, 292 F. App'x 516, 517 (7th Cir. 2008) (coll. cases) (non-precedential decision).